CITY OF ST. PAUL AND OTHERS v.
COUNTY WELFARE BOARD OF ANOKA COUNTY AND OTHERS.

246 N. W. 2d 190.

September 24, 1976—Nos. 45049, 45011.

*John E. MacGibbon,* Sherburne County Attorney, and *Robert B. Danforth,* Assistant County Attorney, for appellants.

*William B. Randall,* Ramsey County Attorney, and *Thomas M. Quayle, Steven C. DeCoster,* and *Richard H. Hoffman,* Assistant County Attorneys, for respondents City of St. Paul and others.

*Robert W. Johnson,* Anoka County Attorney, and *Robert C. Parta,* Assistant County Attorney, for respondent County of Anoka.

Heard before Sheran, C. J., and Otis, Peterson, Kelly, and Todd, JJ., and considered and decided by the court en banc.

PER CURIAM.

These proceedings were commenced in May 1973 by the city of St. Paul, Ramsey County, and The Ramsey County Welfare Board against Anoka County, Stearns County, their welfare boards, the village of Big Lake, and Big Lake Township to establish the settlement for poor relief purposes of an unemancipated minor child, John Daniel Drews. The trial court found that Sherburne County was the proper county for poor relief settlement and we affirm.

John was born on May 26, 1958, in Anoka County where his parents, Mr. and Mrs. John Drews, resided until August 1, 1965, when they moved to Ramsey County. John is afflicted with epilepsy which has resulted in serious behavioral problems and has caused friction between Mr. and Mrs. Drews and their other children. On October 14, 1965, the Drews were divorced but were subsequently reconciled and remarried.

From the time John was 6 months old in November 1958, it is undisputed that he spent practically all of his time in the care and custody of Mrs. Drew's grandparents, Mr. and Mrs. Emil Welck, who reside at Big Lake, Sherburne County. After a long series of medical examinations and treatment by several doctors and by Mayo Clinic, at the recommendation of a psychiatrist John was committed by the Ramsey County probate court to the commissioner of public welfare on March 2, 1966. Since then he has been in boarding homes, under care at St. Paul-Ramsey Hospital, and confined in the state hospital at Cambridge. During this time Ramsey County incurred medical expenses in excess of $30,000. The question before the trial court was whether Minn. St. 1971, § 261.07, subd. 3, imposes liability on Ramsey County, on Anoka County, or on Sherburne County, for medical expenses incurred on behalf of John subsequent to his commitment. The resolution of that question is governed by the following provision of Minn. St. 1971, § 261.07, subd. 3:

"* * * Every minor not emancipated and settled in his own right and living apart from his parents and not supported by his parents shall, after receiving aid and support from others uninterruptedly for a period of one year, acquire the settlement of the person with whom he has resided for a period of not less than one year."

The issue then is whether between March 2, 1965, and March 2, 1966, John was residing with his great-grandparents, Mr. and Mrs. Welck, in Sherburne County or whether he was residing with his parents in either Ramsey or Anoka County. It is also well to note what issues are not before us. Although Ramsey County's petition prays for an order compelling reimbursement by Sherburne County and Big Lake or the Township of Big Lake or by Anoka County, that issue was not litigated and is the subject of a separate lawsuit. Nor do we intimate an opinion as to whether the defenses of estoppel or the statute of limitations are available in that collateral litigation. Finally, the question of whether Mr. and Mrs. Drews or Mr. and Mrs. Welck qualified as "poor persons" within the meaning of the statute was not determined by the trial court and is not before us.

A reading of the record in this matter compels the conclusion that Mrs. Drews realized soon after John's birth that she and Mr. Drews would never be able to cope with John's medical and emotional problems. Unfortunately, they also had the responsibility for another child who was afflicted with cerebral palsy. Mrs. Drews testified that when John was a year and a half old his symptoms of organic brain damage manifested not only epilepsy but hyperactivity. From her day-to-day

experience with her child she realized that ultimately he would have to be institutionalized.

· It was the testimony of Mrs. Welck, the great-grandmother, that John spent 90 percent of the time with her until he was committed. The Welcks furnished him food, clothing, and shelter, and saw that he had medical treatment when needed. According to Mrs. Welck, John returned to his family for no more than 2 or 3 days or a week at a time. The Welcks received no payment for John's support from his parents and expected none.

Mr. and Mrs. Drews testified to essentially the same facts. Apart from their expenditures for medical treatment on behalf of John, amounting to approximately $200, they spent little on him other than to furnish him with presents on his birthday and on other special occasions. Notwithstanding that he treated John as a dependent for income tax purposes, and during the period of his divorce was ordered to furnish him support, John's father in fact permitted the great-grandparents to provide for all of John's needs. On the occasions when John returned to visit his family he was provided no room of his own but was obliged to use the room of one of the other children. There were no clothes kept for him in the Drews' home, nor any toys. In 1964 he was sent to the Cedar School in Anoka County but he remained only a few days and did not thereafter resume attendance. Mrs. Drews recalled that John had been in her home only 2 days between September 1964 and March 1966. On that occasion John was to stay a week, but Mrs. Drews found it impossible to cope with him and returned him to the Welcks after one or two days.

On this record we have no difficulty in holding that the evidence permits, if not compels, a finding that John's residence for settlement purposes between March 2, 1965, and March 2, 1966, was with his great-grandparents in Sherburne County.

The more troublesome questions to which we have alluded—bearing on the issue of whether Sherburne County is liable for debts incurred by Ramsey County without Sherburne County's knowledge or consent, and if so, whether the expenses were reasonable and necessary, whether laches is a defense, and whether John's parents or great-grandparents were "poor" persons within the meaning of the statute—are matters which may be resolved by further litigation in another court.

Affirmed.